Good afternoon, Your Honors. Mark Greenberg for Sarun Chun. I wanted to speak to all three issues. Actually, let me reserve three minutes for rebuttal before I start. On the involuntariness issue, which is the first one, we're dealing with the State Court of Appeal decision as to whether that was a reasonable determination of the issue or not, whether the finding of the first part of Mr. Chun's statement was voluntary because all the detective did, Detective Serafit did, was advise him of the conditions he was facing in prison. That is the sort of picture of the diminutive Mr. Chun going to prison with all these huge fellows. What that doesn't take into account is the further representation made to Mr. Chun that the difference between speaking or not speaking was two years or two months in this place or a life term in this place. Now that, I think, under the totality of the circumstances, when you consider also his youth, the amount of time he was in confinement and kept awake, this was coercive. Now, I think no reasonable interpretation of this record could come out otherwise. And I think this is an unreasonable decision that's contrary to clearly established federal law in determining how one determines whether a statement is voluntary or not. Now, if you there is no prosecution case left. It meets the Brex standard. There is no evidence that Mr. Chun is in this car. Without Mr. Chun in this car, there is no prosecution case. Now, as we proceed to the second two issues, this is a question of prejudice. The State Court of Appeal did find the second part of the statement involuntary. The Court of Appeal, in fact, found it prejudicial in a non-evidentiary sense, a phrase that is difficult to interpret, but was prejudicial in terms of the felony murder instruction. And this is where the California Supreme Court comes in. The California Supreme Court then holds, yes, there was error here. There was federal constitutional error in giving a second-degree felony murder instruction. But in terms of the instructions given alone, at least, it wasn't — it was not prejudicial. Now, the finding of prejudice or not prejudice, what we're dealing — counsel cited IALA, the new case on how to determine prejudice in a federal habeas. Now, as I understand IALA, it says different things in different places. It says everything's the same as Frye v. Plyler, but in other places, it doesn't seem like it's the same as Frye v. Plyler. They apply the AEDPA standard of deference in determining prejudice. Well, that's fine. So what that means in this case is, did the California Supreme Court reasonably apply Chapman v. California? Now, what the California Supreme Court did is two things. It refused to draw any conclusions from the inconsistent verdicts because of the rule that you don't — you leave inconsistent verdicts as they are. You don't draw conclusions from them. The difficulty with that, of course, is that's a rule regarding how one approaches verdicts. Does one let the verdict stand or not? It's not a rule of interpretation of a record. Interpreting a record under Chapman, you have to take into account what the jury did. The jury here convicted Mr. Chun of murder. They had an erroneous instruction on second-degree felony murder. They acquitted him of all the gun use charges. Now, those things are not quite reconcilable. At least there are — it's a true inconsistent verdict. It can stand, but you — in applying Chapman, you cannot draw — you cannot dispel a reasonable doubt that the jury in this case, in fact, relied upon the erroneous second-degree felony murder instruction. There's no way to do it. No fair-minded jurist, to use the phrase that's used in Ayala, could conclude otherwise. There is, again, no way to dispel the reasonable doubt that there was Federal constitutional error in this case in relying on the second-degree felony murder instruction. In that case, the California Supreme Court determination that there was no prejudice is incorrect. Now, under Ayala, does that mean you also then apply Brecht? I don't know. But if you did apply Brecht after making that determination, what do you have here? You have to give some weight to the fact that the jury found that Mr. Chun did not use a gun. They acquitted him of the firing at an occupied motor vehicle. They acquitted him of the personal gun use, the special finding on personal gun use. They convicted — they acquitted him also of another charge. They acquitted him of the first-degree circumstance of firing from a motor vehicle and killing someone. One has to entertain the strong possibility that the jury found that he did not use a gun. But then the jury finds him guilty of murder. They find him guilty of murder probably under a second-degree felony murder instruction. So that means he had to have aided and abetted in the crime of a 246, firing at an occupied motor vehicle. But then, if he didn't fire a gun, what did he do? There is no evidence presented in this trial as to what he did do. He was a member of a gang. That was it. He was in a car with other gang members. That was it. It's mere associational evidence. There is no evidence of anything that he did that would constitute aiding and abetting. There was no evidence that he said, shoot that gun. There was no evidence that he applauded. There was no evidence that he meets the Brex standard as well. Under both those issues, the second issue, the way the court of appeal dealt with the involuntariness, the prejudice on the involuntariness issue, and the way the California Supreme Court dealt with the prejudice on the instructional issue, is unreasonable. It's unreasonable under IALA, and this Court should reverse the district court's decision. I'll reserve the rest of my time for rebuttal. Thank you. Thank you, Counsel. If it please the Court, Melissa LaPone for Respondent. How you get one to the forehead, that's how we do it. That's what Mr. Chun said on January 28th, months after he committed this crime, months after he confessed it. The day before, he said, you don't know who you are F-ing with, N-word. This is TRG. Bang, bang, mother F-er. That's how we do it. Wait till I get out. Bang. And he makes a motion with his hand at the same time as he's doing this. So not only did Mr. Chun confess to this crime, he owned it. He confessed to it again, a second time. He was not only a gang member, he did not just profess solidarity with their methods. He has a CD that was found in his home where he has Snub written on a CD about Crip Killer. This is not some, you know, airy-fairy music-loving nun, you know, who was somehow missiled. This is not even the first time he's heard Miranda. He's been at the rodeo before. So I will start out with that and then move on to a dispute counsel's characterization as three issues. This Court certified two issues, and it was perhaps my error to respond to counsel's argument in the same way that he framed it with three issues, but I thought that would be easier for the Court to understand. But really, there's only ever been two issues before this Court, and that is, the first issue is that it is the Fifth Amendment of the Constitution, and that was decided by the State Court of Appeal. The second sort of sub-issue, if you will, that he raises really for the first time here that's never been introduced into in State court would be this idea that the Court's decision upholding any part of the confession was prejudicial or was incorrect and prejudicial. And Mr. Chun never brought that issue to the California Supreme Court. That was never and it's not certified by this Court. The issue before this Court is whether or not the State appellate court's decision as far as what he raised at the time as his issue with regard to Miranda, which and his issue with regard to voluntariness. And actually, he did not raise any issue with regard to the voluntariness of his Miranda waiver. He explicitly in his State court pleadings said that he was not going to raise that issue and that it was not raised below, although, in fact, it was raised below and the trial court did address it. And that's in their ruling. It's also in the motions of the parties. But so what we have before the Court is the State appellate court's decision that basically there was that at one point in the interrogation, and under State law, I think it's important to understand that when you look at, let's say, People v. Wray, 13 Cal 4, 3, and 4, at page 339, it says that express or implied promises of leniency or advantage to the accused, if it is a motivating cause of the confession, are sufficient to invalidate the resulting statements and to make them involuntary and inadmissible as a matter of law. So when you talk about the Court looking at these two admissions separately, well, historically, admissions are referred to as different than an entire confession. But there can be no doubt from this record that the trial court and the court of appeal looked at all of the factors. And when you look at appellant's opening brief in State court, it's important to note that basically he focuses entirely on the coercion promise of leniency, which is what the Court responds to. He does not raise many of the same issues that he raises now before this Court. He did not bring that factual basis to the court of appeal. Nevertheless, the court of appeal did a thorough review of the record and took a look at what the trial court did, and they did a thorough review of the trial court's record. And in making their decision, there can be no question that they looked at the entirety of the circumstances first, and then they looked at the two statements that appellant wanted them to look at. And in fact, in his opening brief, he makes the argument that the first statement made by Serapeep is coercive, and therefore, everything, nothing else matters. The entire — so it is appellant who directed the Court's attention to look first at the statement made by Serapeep with regard to whether or not he could serve two years, four years, you know, the rest of his life. He made that argument and then basically makes the argument that everything else after that must be — which would be consistent with California law, which is consistent with Federal law. And then he also makes a further argument, well, if you don't find that, then look at this other statement. It's an implied promise of leniency. And that's what the Court did. They looked at the entirety of the circumstances, and they followed the argument, and they responded, as did Respondent. And I think also even in — California law clearly recognizes — and the Court cited People v. Williams, but People v. Williams cites to Withrow. So I think there can — and the Court also cited to another Supreme Court authority. But basically Withrow v. Wilson really cites to the factors to consider in assessing voluntariness of an admission. And those are precisely the factors the trial court and the court of appeal relied on in their decisions. And it would be an extremely rare case where a person who has been advised multiple times of their Miranda rights — and, in fact, if you want to look at the totality of the circumstances and the arguments that perhaps were not raised before, it's interesting to note that when you look at Chun's interview with Detective Stanton, he kind of toys with her. She says, hey, what's going on with the gray clothing? You know, you've got gray shoes, you've got gray this. And he says, oh, yeah, aren't my shoes really cool? No, I don't think it's cool. I think it's sick. And she's like, yeah, you know, there are — I mean, he's toying with her. So when you're looking at the totality of the circumstances, take a look at the transcript from his prior interview with Stanton, where they go back and forth, and she's asking him about his gang clothing. She even asks him at one point that whether or not — what would he make of a crab coming to him — first of all, what is a crab? And he says, a crip. And what would he make of a crab coming up to him and saying, what's up, cuz? And he said, I would probably say something like, was a responding challenge of, like, what's your problem or what you doing? Right. But then the second interview occurs much later, different set of detectives. True? It's not much later. No, it's a couple hours later. It is a different set of detectives, certainly. Yes. So he was interviewed by Stanton at what time? He was interviewed by Stanton at, I believe, around 3 o'clock in the morning, but I'm not entirely sure of the time on that. So when did the next interview occur? There's another interview that occurs, I believe, in the later morning, and then the last interview, the interview with these detectives, occurs around 9.40 at night, 9.30 at night. And how long had he been awake? Well, that's — he had nine, almost nine hours of time that was uninterrupted with basically somebody monitoring him to respond to requests where he could have slept. And both the trial court and the Court of Appeal looked at the video. I don't know if you've looked at the video, but find that he does not appear to be exhausted. And I think that under — I just asked how long he'd been awake. I didn't ask when he could have slept. Whether he could have slept, I — 35 hours. Do you dispute that? It wouldn't have been 35 hours no matter what, because he was arrested in the early morning hours of the night before. So it would be less than 24 hours, no matter what. And he's picked up around, I think, midnight or 1 a.m. And so this interview would happen the following night at 9.40. So, yeah, I would dispute that. Now you're down to about four minutes. Do you want to get to the second issue? Yes. To prevail under AEDBA — okay. Appellant has aired his grievances in the California Trial Court, the State Court of Appeal, the California Supreme Court, again in the California Court of Appeal, and in Federal District Court. The extensive review resulted in a finding of two non-prejudicial errors. The California Court of Appeal found that the introduction of appellant's admission that he fired a larger gun was inadmissible because it was in response to the implicit promise of leniency. And the California Supreme Court found that it was error to instruct with a second-degree felony murder where the underlying crime is assaultive. Now, keep in mind that at the time, there was a collateral purpose rule. So it was not under the law of California. It was an error because the Supreme Court later found and overruled the collateral purpose rule. But the court instructed the jury appropriately as to what the law was before the Supreme Court changed the law. Right. But isn't — go ahead. They said it's an error, however, right? So in terms of whether that error has harmlessness, are you down to the question of whether there's sufficient evidence on malice? Because they — they, meaning the jury, did make a specific finding on the firing of the gun. Well, the jury was only instructed as to two possible second-degree — second-degree murder. So they had to have chosen one of those two possible second-degree murder theories. The first was that he participated in a — in a willful and malicious drive by a — a shooting at an occupied motor vehicle. The second was that he participated in an implied malice murder. And what the California Supreme Court said is anybody who found under the felony murder rule that he participated in a malicious and willful shooting at an occupied motor vehicle necessarily found that he committed an implied malice or murder, because he — that — that obviously shows conscious disregard for life. So even in a part from all of the additional facts, which they also cite to — What — what — what do you mean he participated in it? Assume he didn't do the shooting. What evidence is there as to what he did? Well, so the cars are side-by-side, right? And he's in the back seat closest to the car. Somebody shot perpendicular, a .38, right across through the bullet, through the victim's skull. Either he leaned back to let his friend do it, or he shot it. Well, the jury said he didn't shoot it. We know they didn't — the jury said no, he didn't shoot it. Well, the jury's verdict — So is it disregard that? Well, the jury's verdict is confusing, because there's only two ways to get to a second-degree murder. They were only instructed under two possible theories. Okay. So let's assume that you give some credence to the verdict, which was quite specific on the issue of shooting, and they say, no, no, no. So he didn't shoot, according to the jury. Mm-hmm. So then you would need to convict — to sustain the conviction, you would have to have implied malice, an implied malice murder. Is that what's left? Those were the only two theories upon which the jury was instructed. And what, then, is the evidence on the second, leaving out he didn't — he wasn't a shooter? Oh, well, aside from his additional admissions, which the prosecutor argued at Arteet, I believe, 1280, that he made four admissions, there was all of the evidence that the Court of Appeal — they also cited to the one-to-the-dome statement, but there's all the evidence that the Court of Appeal relied on. He identified the car before the — before the picture was shown to him. He identified the driver before any picture was shown to him. Well, actually, I think it may have been shown to him, but he identified Ruthanna Chan as the driver. Are you trying to prove that he was in the car? Is that what the relevance of identifying the driver is? I mean, what did he do? Assume he was in the car. Is that enough? Was that enough? Just to be in the car. Well, that's not what the jury found. The jury found that he either — We're kind of talking probably past each other in that. Okay. I'm just asking you to sustain a conviction. Would being in the car be enough? To sustain a conviction. Okay. If — For a second-degree murder. Right. If the evidence didn't show — I mean, if they had not found street terrorism as well, which also, you know, finds that he was an active participant in a gang and that he assisted in criminal conduct of a gang. He was in the car and he was an active member of a gang. Is that enough? And he's a bad guy. Is that enough? That's not the situation here. I'm asking you if that's enough, because then we might add to it. Okay. Okay. If the jury had not — I mean, I don't see how you can come to that conclusion when the jury also found in favor of the street — also found him guilty of street What relevance does that have for proving second-degree murder? That's the question. Well, if you're looking at what the verdict does show here, it shows that they found that he was more than just merely sitting in the car, listening to music, and they found that he was an active participant in a street gang who had the purpose of facilitating the criminal conduct — felonious criminal conduct of his fellow gang members. You didn't say that in the jury verdict. And with the conviction of street terrorism. No, but all the other stuff you said — sitting — he wasn't sitting around just listening to music in the car. That's not part of the verdict. They said he didn't shoot. So you have the fact that he's part of a gang. He's a passenger in a car. What else do you have as to what evidence is there to record what he did? Pow to the forehead, one to the dome. I mean, a crip killer. I'm snubbed. I mean, he identifies the type of firearm used as a snub — as a snub firearm, snub 38, before the detectives even know that it's a snub 38. Well, that could make him be in the car. Yeah. OK, so — If you just wait just one second. What we're trying to distinguish between — because you agree that this jury verdict is a little wacky, but we're trying to distinguish, well, if he didn't shoot the gun, what would it take to sustain the conviction under the malice? And we're trying to figure out, well, what were the facts? Well, he's a gang guy in the car. Presumably, if he's there, he could have seen the gun. Is there something else that he did that we should look to? Is there some evidence of what he did? I think you have to look at the fact that there were multiple gun — OK, first of all, that they are within arm's reach, that there were multiple gunshots fired. It is possible. I mean, initially in the trial, I believe they argued that there were only three people — defense argued that there were only three people in the car, that this demon from Oakland was the third gangster, and there was really no evidence that there was a fourth person at all in the car. So that kind of changes — that the theory kind of changes over time. But the prosecution always maintained that there were four people in the car. So potentially, the jury could have under — you know, accepted the prosecution's theory that there were four people in the car, based on — and Serene Chun's admission. But I — and then you have to look at the circumstances of the shooting. The fact that there are three victims, one is shot twice in the head — not once, twice, by two different guns. I mean, that's not a coincidence. Right, but see, the problem with all this is the jury verdict, where they said he didn't fire anything, he didn't fire a weapon. So we're just — we're not — we're just trying to let you argue what else there is that would — that's in the record that we might have overlooked. Well, I think you have to go back to the California Court of Appeals summary of the evidence. And you have to look at the California State Supreme Court's decision that basically any juror who found that somebody participated in this crime necessarily found that he acted with a conscious disregard for life. And I guess the question that I would pose to you is, how would he be in the car and not participating in this gang drive-by shooting? I mean, they roll up on somebody, and with seconds, three firearms come out, start shooting. They seriously wound or injure every occupant of the car. And the backseat guy, they managed to hit twice in the head. They really wanted to get him. And the jury heard all that and said he didn't fire a weapon. I mean, that's the curious part of the case. You know — We were sitting there. We didn't hear the evidence. We have the transcript, so — but I think our questions have taken over time, unless you have some others. Okay. Thank you, Cassidy. Your rebuttal. There's four people in the car. There's three guns. The jury rejects premeditation deliberation. This was a sudden event. There's an eyewitness that's behind the assailing car that sees flashes coming out of the front seat, and then inconsistent testimony that flashes are coming from the passenger side of the backseat. Chun is on the driver's side of the backseat. He could be sitting there without evidence as to something specific that he did, other than being a gang member. There is no evidence that he did anything. Now, the — I think it's the one to the dome. This is a statement he made later in jail. The attorney general wants to take that as an admission. Well, there's nothing expressed that connects that anywhere to this particular crime. She talks about they found the rap song. I forget what the words are. I got my nine. I feel fine. Gang members have their rap songs. Has the court heard the country western song, I shot a man in Reno just to see him die? These are middle-class people. Love that song. Gang members have their songs. It doesn't prove anything. It proves that he's a gang member. That is what the court, the California Court of Appeal, depended on, his association with them being a gang. That's what they cited was the gang evidence. They did not cite any specific act that can be reconciled with the jury's finding that he did not use a gun. Regarding the suggestion that there's some exhaustion problem here, I think I was present in all these proceedings that the attorney general's talking about. Yes, the argument in the Court of Appeals was that there was a threat of harsher treatment at the beginning that invalidated the entire statement. Of course that's the argument, because it does. The alternative is then at least where the statement, where there was the promise of leniency, that has to be suppressed from that point on. So that argument was made. Then we get, the case goes through the system. We get a reversal. The second-degree murder verdict is reversed. I have no reason to file a petition for rehearing saying that you have to suppress the gun thing, but then the attorney general files a petition for review and it gets granted. In my answer, I believe actually I filed a counterpetition for review, I don't remember exactly, where this issue is raised. It was raised in the California Supreme Court. The voluntariness issue was raised, again, in the California Supreme Court, was I believe they didn't take, I don't think, they didn't take that issue. But what they did do is they remanded to the Court of Appeals for a determination whether the combined error on the second-degree felony murder instruction and the involuntariness issue was prejudicial. So this case is properly before this Court on all the issues presented. But again, no reasonable jurist, no fair-minded jurist, to use Ayala's phrase, could have dispelled a reasonable doubt in applying Chapman v. California to this record, either on the second-degree felony murder instructional issue or on the issue of the involuntariness of the second statement, the using the gun. Because I think in terms of using the gun, the jury, though they found he didn't use a gun, took that admission as an admission that he did something. And I think that's the prejudice that adheres in that. But that's not, that's not rational. That's not, it doesn't survive Brecht. And with that, I'm prepared to submit it. Thank you, counsel. Thank you both for your arguments this morning, or this afternoon, sorry. And the case just heard will be submitted for decision.
judges: Thomas, Reinhardt, McKeown